UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                          CRIMINAL NO. 3:12-CR-21-DPJ-LRA

TERENCE DALE JENKINS

ORDER

Defendant Terence Dale Jenkins has filed a Motion for Compassionate Release under the First Step Act and the CARES Act. Mot. [114]. The Government opposes his request. For the following reasons, Jenkins's motion is denied.

I.    Facts and Procedural History

In March 2012, a grand jury indicted Jenkins, then an officer with the Jackson Police Department, on four counts of bribery and conspiracy related to his providing police protection for drug transactions. Jenkins pleaded guilty to a single count and was ultimately sentenced to 107 months' incarceration, which he is serving at the Federal Correctional Institution in Loretto, Pennsylvania. According to the Bureau of Prisons website, his projected release date is January 30, 2021, but Jenkins indicates that he will be released to a half-way house in September 2020. Fearing he may contract COVID-19 if he remains incarcerated, Jenkins asks the Court to order a compassionate release to home confinement.

II.   Analysis

Compassionate-release motions arise under 18 U.S.C. § 3582(c)(1)(A)(i), which provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

> on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The parties dispute whether Jenkins exhausted as contemplated by the statute. In his initial motion, filed pro se, Jenkins did not mention exhaustion at all, and in its response, the Government asserts that "Jenkins has yet to exhaust statutorily required administrative remedies." Resp. [118] at 2. But in reply, the attorney appointed to represent Jenkins says the following about exhaustion: "To be clear, Mr. Jenkins maintains that he filed the requisite compassionate release request with the Warden at FCI-Loretto. He also advises that it was unilaterally denied . . . . Considering this, the main argument of the government [regarding exhaustion] fails." Reply [120] at 8.

"The defendant bears the burden of demonstrating that he is entitled to compassionate release and that he has exhausted his administrative remedies." *United States v. Davis*, No. 07-357, 2020 WL 2838588, at *2 (E.D. La. June 1, 2020) (collecting cases). Here, Jenkins himself never mentioned efforts to exhaust his administrative remedies when he filed his original motion. And the reply submitted by counsel offers no record evidence substantiating that he did. Indeed the reply offers no details such as the date of the request, how it was made, or when it was rejected. Jenkins has not met his burden to show he exhausted his available remedies.

Despite that failure, Jenkins suggests that "[t]he Court can waive the 30-day requirement for exhaustion of administrative remedies because of the high risk that Mr. Jenkins could become infected with COVID-19." Reply [120] at 8. In making that argument, Jenkins abandons the statutory text and overlooks relevant Supreme Court precedent.

The Court's analysis of the statutory exhaustion requirement "begins with the text." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).  As noted, § 3582(c)(1) states that "the court may not" modify Jenkins's sentence until he exhausts his remedies.  Nothing in § 3582(c) grants authority to waive this requirement.

Jenkins's legal authority does not say otherwise.  According to him, "courts throughout the country have continued to waive the administrative exhaustion requirements under the First Step Act, where circumstances warrant."  Reply [120] at 9.  To support that contention, Jenkins cites cases where the inmates sought sentence modifications under different First Step Act provisions through petitions filed under 28 U.S.C. § 2241.  *See Gurzi v. Marques*, No. 18-CV-3104-NEB-KMM, 2019 WL 6481212, at *2 (D. Minn. Oct. 10, 2019); *Washington v. Bur. of Prisons*, No. 1:19-CV-01066, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019).  Significantly though, the exhaustion requirements for § 2241 are judicially created.  *See Mayberry v. Pettiford*, 74 F. App'x 299, 299 (5th Cir. 2003) (noting that exhaustion under § 2241 is a judicially created mandate); *see also Leuth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (explaining that the exhaustion requirement under 2241 is "judicially created, not jurisdictional").

When—as here—Congress requires exhaustion, the obligations become mandatory.  The United States Supreme Court explained why in *Ross v. Blake*, while examining the statutory exhaustion requirements under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  136 S. Ct. at 1855.[1]  Although the PLRA itself requires exhaustion, the Fourth Circuit Court of Appeals concluded that when "special circumstances" exist, district courts have authority to waive those exhaustion requirements.  *Id*.  The Supreme Court disagreed:

---

[1] Section 1997e(a) states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

3

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. *See McKart v. United States*, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969) ("The doctrine of exhaustion of administrative remedies . . . is, like most judicial doctrines, subject to numerous exceptions"). But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.

*Id.* at 1857. As for the Fourth Circuit's special-circumstances test, the Supreme Court held that "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." *Id.* at 1856.

The same is true here. Like the PLRA, § 3582(c)(1)(A) is a statutory exhaustion requirement that offers no discretion for judge-made exceptions. Instead, the statute states that the Court "may not" modify Jenkins's sentence until he exhausts his remedies. *See Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020) (holding that the PLRA's "exhaustion obligation is mandatory—there are no 'futility or other [judicially created] exceptions [to the] statutory exhaustion requirements'") (quoting *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001)). When a mandatory exhaustion rule like this exists, the Court "must enforce the rule if a party 'properly raise[s]' it." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019). In this case, the Government raised Jenkins's failure to exhaust.[2]

On a final note, the Court shares Jenkins's concern for inmate safety. That said, courts from across the country have concluded that they lack authority to waive

---

[2] Some courts have held that waiver is beside the point because § 3582(c)(1) is jurisdictional. *See, e.g.*, *United States v. Black*, No. 2:12-CR-263-3, 2020 WL 2213892, at *2 (S.D. Ohio May 7, 2020) ("The exhaustion requirement contained in § 3582(c)(1)(A) is jurisdictional and cannot be waived, even due to emergencies such as the COVID-19 pandemic.") (collecting cases). Whether that is true is debatable but irrelevant in the present case because the Government has not waived exhaustion.

§ 3582(c)(1) even when faced with COVID-19 outbreaks. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that failure to exhaust "presents a glaring roadblock foreclosing compassionate release at this point"); *see also United States v. Van Sickle*, No. 18-250-JLR, 2020 WL 2219496, at *4 (W.D. Wash. May 7, 2020) ("[B]oth this court and other district courts in the ninth circuit which have considered this issue have nearly unanimously concluded that failure to exhaust administrative remedies is fatal to a compassionate release motion even in light of the urgency created by COVID-19."); *United States v. McIndoo*, No. 1:15-CR-142-EAW, 2020 WL 2201970, at *9 (W.D.N.Y. May 6, 2020) ("[I]n the absence of waiver or facts amounting to estoppel, this Court is without the authority to excuse Defendant's failure to comply with § 3582(c)(1)(A)'s exhaustion requirement."); *United States v. Pack*, No. 2:17-CR-20002-10, 2020 WL 2174447, at *2 (W.D. Tenn. May 5, 2020) (concluding that because defendant did not exhaust, "[t]he Court does not have authority to consider [his] Motion" under § 3582(c)); *United States v. Roberts*, No. 15-135-01, 2020 WL 2130999, at *2 (W.D. La. May 5, 2020) ("Section 3[58]2(c)(1)(A) does not provide this Court with the equitable authority to excuse Roberts' failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Brown*, No. 04-CR-143-DRH, 2020 WL 2128861, at *3 (E.D.N.Y. May 5, 2020) ("While the current health emergency warrants consideration of compassionate release requests in an expedited manner, Section 3582 does not allow for the waiver of exhaustion due to exigent circumstances."); *United States v. Gomez*, No. 2:18-CR-1435-1, 2020 WL 2061537, at *1 (S.D. Tex. Apr. 29, 2020) (observing that "[c]ourts in the Southern District of Texas have ruled that defendants who move for compassionate release still need to exhaust administrative rights . . . in order to bring a motion pursuant to 18 U.S.C. § 3582(c)(1)(A)" (collecting cases)); *United States v. Nevers*, No. 16-088, 2020 WL 1974254, at *2 (E.D. La. Apr. 24, 2020) ("Because the Court

cannot consider Petitioner's request for instant release or home confinement until she has complied with the exhaustion requirements of § 3582(c)(1)(A), the Court must deny the instant motion for failure to comply with the mandatory exhaustion requirements under § 3582(c)(1)(A)."). Jenkins must comply with § 3582(c)(1)(A).[3]

III.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Jenkins's Motion [114] is denied without prejudice for failure to exhaust. Jenkins may re-file his motion once he achieves one of the two avenues for exhaustion under § 3582(c)(1)(A).[4]

---

[3] A few courts have reached a different conclusion by ignoring the words "may not" in their statutory construction and suggesting that the remaining language in § 3582(c)(1)(A) is less strict than the PLRA language *Ross* found to be mandatory. According to them, inmates may bypass exhaustion altogether by simply waiting 30 days after making a request to the warden, so unlike under the PLRA, exhaustion is not mandatory. With deference, the words "may not" are critical. Courts "may not reduce a term of imprisonment" unless the inmate first makes a request to the warden and either appeals an adverse ruling or receives no response within 30 days. 18 U.S.C. § 3582(c)(1)(A). That the inmate can proceed after making a request and waiting 30 days does not mean the request was never mandated. Indeed the 30-day waiting period is a statutory futility exception like the one in the PLRA. As *Ross* notes, the PLRA "contains its own, textual exception to mandatory exhaustion" making judge-made exceptions improper. 136 S. Ct. at 1858. Section 1997(e)(a) states that inmates must exhaust "available remedies." Accordingly, inmates "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858. At bottom, § 3582(c)(1)(A) provides two exceptions to the dictate that a court "may not reduce a term of imprisonment," both of which require an initial request to the warden. 18 U.S.C. § 3582(c)(1)(A). The statute provides no basis for creating exceptions.

[4] The Court anticipates that Jenkins will refile his motion once he exhausts administrative remedies. When he does, the parties may brief the issues they deem relevant. That said, they are instructed to at minimum address two specific points. First, Jenkins argues that the Court has authority under § 3582(c)(1)(A)(i) to order him to "order home confinement as a compassionate release remedy." Reply [120] at 24. That section allows the court to "modify the term of imprisonment," but it does not mention modifying the physical location where the defendant serves his term. Some courts have therefore held that they lacked authority to order a defendant to home confinement. *See, e.g.*, *United States v. Johnson*, No. CR 17-165, 2020 WL 2526965, at *2 (E.D. La. May 18, 2020). Second, the Court's review of the BOP website did not list the Loretto facility among those that have reported COVID-19 cases, and Jenkins's motion did not

**SO ORDERED AND ADJUDGED** this the 10th day of June, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

indicate that he has any health issues that might make him susceptible to a more severe case of COVID-19.  Taken to its full breadth, Jenkins's argument would mean that all inmates in all federal facilities present extraordinary and compelling reasons for early release.  If he files again, he should address the specific risks he faces and why they qualify him for relief.